UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-21035

A.C. (A MINOR),

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,
A foreign corporation,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR TRIAL BY JURY

Plaintiff, A.C. ("Plaintiff"), by and through undersigned counsel, sues Defendant, ROYAL

CARIBBEAN CRUISES LTD. ("Defendant" or "RCCL"), and demands trial by jury, stating as

follows:

## PARTIES AND JURISDICTION

1.    Plaintiff seeks damages in excess of $75,000.00, exclusive of interest, costs and

attorney's fees.

2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C.§ 1333 as

the causes of action asserted are maritime torts.

3.    This Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in

controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between

citizens of different States and/or citizens of a State and citizens or subjects of a foreign state.

4.    Suit is filed in Federal Court because of the federal forum selection clause in the

Passenger Contract Ticket issued by the Defendant.

5. Plaintiff is *non sui juris* and is a resident and citizen of Hong Kong, China.

6. Defendant is a foreign corporation who is authorized to conduct and who does conduct business in the State of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County Florida.

7. Defendant is a citizen of the State of Florida.

8. Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

      a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

      b. Had an office or agency in this state and/or county; and/or

      c. Engaged in substantial activity within this state; and/or

      d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## FACTUAL ALLEGATIONS

10. At all times material hereto, Plaintiff A.C. was a minor child.

11. At all times material hereto, Defendant RCCL owned, operated, managed, maintained and/or controlled the vessel *Ovation of the Seas*.

12. On or about April 11, 2017, Plaintiff was a paying passenger on Defendant's vessel *Ovation of the Seas*, which was in navigable waters.

13. Plaintiff A.C. was a 10 year old girl on the second day of her 4 night voyage. A.C.

was accompanied on the voyage by 10 members of her immediate and extended family

14.    The voyage departed from Singapore on or about April 10, 2017 with one stop scheduled in Penang, Malaysia.

15.    On or about April 11, 2017, at approximately 9:50 a.m., Plaintiff participated in an attraction onboard the *Ovation of the Seas* called the FlowRider Surfing Simulator (hereinafter "FlowRider").

16.    Plaintiff A.C. was taking a private lesson with Defendant RCCL's FlowRider coach when she suffered a traumatic and severe broken left hip.

17.    The FlowRider is an attraction that shoots a three-inch sheet of water up a sloped surface at a high velocity to simulate the surface of a wave. Users then attempt to ride this sheet of water on a board either laying down or standing up.

18.    Defendant has actual knowledge that the FlowRider often causes passengers to fall, including through loss of balance, as evident in their online marketing for the attraction "[o]nly Royal Caribbean gives you the chance to catch a wave right onboard. Grab a board and hang ten on our 40-foot-long surf simulator, *or cheer on friends from stadium seating with prime wipeout views*." https://www.royalcaribbean.com/cruise-activities/flowrider

19.    As a minimum threshold for allowing passengers on to the FlowRider, Defendant's own rules and restrictions require that riders be at a minimum 58 inches tall if they are standing on the boards while riding. Guests underneath this height are typically not allowed to ride the attraction. https://www.royalcaribbean.com/cruise-activities/flowrider

20.    Upon information and belief, on the date of the subject incident, the subject FlowRider was malfunctioning and propelling water at a higher velocity than normal, therefore unreasonably putting its passenger participants at a higher risk of injury.

21.     The FlowRider onboard the *Ovation of the Seas* is different from a standard FlowRider, because employees and/or agents of RCCL modified it by shortening its overall length in order to fit the attraction on the deck of the cruise ship.

22.     Due to this shorter length, a person propelled up the surface of the "wave" can be thrown into the back wall at a very high velocity, since unlike a standard flow rider, the back wall of the attraction is much closer to the "wave" front. This makes an already inherently dangerous attraction even more dangerous, such that it becomes unreasonably dangerous. This is not an obvious danger of which a passenger should be aware.

23.     The FlowRider onboard the *Ovation of the Seas* is different from the current FlowRiders being manufactured. FlowRiders now utilize "Pillow Padding" in the recovery zones of FlowRiders in order to help support falls and decrease injuries. RCCL does not utilize the up-to-date technology, therefore unreasonably putting its passenger participants at a higher risk of injury.

24.     RCCL does not conform to the policies utilized and recommended by the FlowRider manufacturer.

25.     According to the FlowRider manufacturer, "Riding a FlowRider takes skill, balance and most importantly, practice…That learning curve takes time and dedication." RCCL allows its passengers, without any prior practice, acclimation through evaluation of the potential participant's athletic ability (i.e., balance and skill), to attempt to stand on a board, without sufficient assistance, while a sheet of water is shot out at an extremely high velocity. This results in passengers suffering devastating falls and sustaining serious injuries. Passenger injuries due to participating in the FlowRider aboard RCCL's vessels are occurring and have been occurring at a high rate, yet RCCL does not alter its policies, nor adequately inform its

passengers of the high rate of injuries.

26.     In a 2008 meeting between Wave Loch (the original FlowRider manufacturer) and RCCL, Wave Lock recommended that RCCL display a warning sign showing a skull and cross bones as an indicator of the serious risk of injury or even death associated with the FlowRider. RCCL ignored Wave Loch's recommendations.

27.     Additionally, RCCL does not include adequate warnings on its website advertising the FlowRider regarding the potential to being seriously injured and/or killed. Moreover, RCCL does not place adequate signs at the FlowRider, warning potential passenger participants of the potential to be seriously injured and/or killed while participating in the FlowRider.

28.     Defendant also does not adequately warn the parents of minor children of the significant danger for young children to ride the attraction due to their smaller stature and growing musculoskeletal structure.

29.     In the 2011 decision of *Johnson v. Royal Caribbean Cruises*, Ltd. 449 F. App'x 846, (11th Cir. 2011), the Eleventh Circuit Court of Appeals ruled that shipboard personal injury waivers are void and unenforceable pursuant to 46 U.S.C. § 30509. In *Johnson*, RCCL required the plaintiff to sign an electronic personal injury waiver prior to participating in a shipboard FlowRider. Despite knowing, since 2011, that the subject personal injury waivers are void and unenforceable, RCCL still requires its passenger participants to sign the same subject personal injury waiver. This is a blatant attempt by RCCL to deter passengers who aren't familiar with maritime law from filing a lawsuit or contacting an attorney due to injuries sustained while participating in a shipboard FlowRider. The average passenger participant believes that they have no claim due to the personal injury waiver presented by RCCL. RCCL should be enjoined

from presenting a personal injury waiver to future potential FlowRider participants.

30.     While Plaintiff was riding the FlowRider in a standing position, the rushing water current generated by the attraction caused her to lose her balance and fall.

31.     Plaintiff A.C. fell onto her left leg and her hip/ pelvis area before the current of the rushing water twisted her lower limbs behind her and caused her to tumble in a circular motion.

32.     Her fall coupled with the force generated by the FlowRider's strong current of water caused her to suffer severe and traumatic injuries including a fractured left hip.

33.     The severity of the injury necessitated immediate emergency surgical repair which was delayed for 4 days after the subject incident.

34.     The surgery that was performed on A.C. required the insertion and implementation of metal rods and screws into her hip bones.



35.     Immediately following the incident, Plaintiff A.C. was taken to the medical center

aboard Defendant's ship where Plaintiff was seen by the ship's medical staff, including its physician, all of whom failed to diagnose that Plaintiff was suffering from a displaced left hip fracture after a physical examination of Plaintiff's injury, and ordering/reading x-rays of her hip, femur and knee, which indicated the severity of Plaintiff's injury.

36.     At the time A.C. was in the ship's medical center, she was screaming in pain and could not walk or even straighten her leg.

37.     Despite the reports of significant pain and difficulties ambulating, the ship's physician disregarded A.C and her parents' concerns and diagnosed the child with muscle pain. The minor child's parents repeatedly asked the doctor to confirm that there were no fractures and they were repeatedly assured there was nothing to worry about. The child was prescribed ibuprofen and discharged.

38.     X-rays taken at this ship's medical center clearly evidenced the displaced fracture to A.C.'s left hip.

39.     As a result of the ship physician's failure to diagnose her broken left hip, the required emergency surgery was delayed by 4 days. This delay has led to permanent complications including but not limited to permanent disability and disfigurement.

40.     Plaintiff A.C.'s surgically repaired left hip has resulted in permanent and life changing damage, including but not limited to causing avascular necrosis, angulation of the fracture known as "coxa vera" and a premature closure of the left leg/hips growth plate.

41.     As a result of the injuries she suffered after the incident and the persisting conditions caused by her fall, her left leg is shorter than her right leg, a condition which could be permanent.

42.     At all times relevant, the ship's doctor and ship's nurse worked in the ship's medical center, with the intent of providing medical care to passengers, including Plaintiff.

43.     At all times relevant, the ship's doctor and ship's nurse were employees or agents of Defendant, and at all times acted within the course and scope of their employment or agency.

## COUNT I – NEGLIGENCE

Plaintiff incorporates by reference and realleges as though originally alleged herein the allegations of paragraphs 1 through 43 and further alleges:

44.    Defendant RCCL owed Plaintiff the duty to exercise reasonable care under the circumstances.

45.    Such duties include, but are not limited to, the duty to provide its passengers reasonable care to inspect for, and resolve, dangerous and hazardous conditions that passengers, including the Plaintiff, will likely encounter.

46.    Such duties also include, but are not limited to, the duty to maintain its ship in a reasonably safe condition for the use and enjoyment of its passengers.

47.    Such duties also include, but are not limited to, the duty to warn passengers of hazards which passengers may reasonably be expected to encounter.

48.    On or about April 11, 2017, RCCL and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

49.    On or about April 11, 2017, the Plaintiff was injured while participating in the shipboard FlowRider aboard the *Ovation of the Seas*.

50.    Plaintiff was injured due to the fault and/or negligence of RCCL, and/or its agents, servants, and/or employees as follows:

    a.   Installing an attraction on Defendant's vessel that was inherently and unreasonably dangerous for passengers to use;

    b.   Modifying the FlowRider, on Defendant's vessel in such a way that the already dangerous attraction was made even more dangerous;

    c.   Failing to recognize the inherent risks involved with putting passengers on a ride

that shoots water at them at a high velocity and propels them towards a wall;

d. Failing to properly and safely instruct passengers participating in the attraction on its proper use;

e. Failing to warn passengers of the risks and dangers involved with participating in the attraction;

f. Failing to properly and adequately supervise the passengers participating in the FlowRider attraction;

g. Failing to properly and adequately assist the passengers participating in the FlowRider attraction;

h. Failing to properly and adequately supervise the instructors managing the FlowRider attraction;

i. Failing to take proper precautions for the safety of passengers when encouraging passengers to participate in the attraction;

j. Failing to promulgate and/or enforce rules, restrictions or procedures to ensure the safety of passengers using the attraction, including height restrictions for minor passengers;

k. Failing to promulgate and/or enforce rules or procedures to ensure that instructors are adequately supervising the attraction and instructing passengers in its use;

l. Failing to engage proper and reasonable safeguards to prevent passengers from being injured while participating in the subject activity;

m. Failing to properly and adequately train RCCL employees and/or agents acting as instructors in how to conduct the subject activity safely;

n. Failing to design the FlowRider without any structural dangers or features that

create an inherent risk of injury;

o.  Failing to prevent improper and dangerous use of FlowRider;

p.  Failing to provide safety equipment to passengers participating in the FlowRider attraction;

q.  Failing to station instructors in proper positions around the FlowRider to help participants in need of aid;

r.  Failing to warn passengers of the dangers of participating in the FlowRider attraction;

s.  Instructing the Plaintiff to use the FlowRider attraction in a dangerous manner;

t.  Failing to supervise its employees/agents instructing and assisting passengers participating in the subject activity;

u.  Failing to train its employees/ agents to properly assist and help injured passengers participating in the subject activity;

v.  Hiring employees/agents for supervising, instructing, and assisting passengers participating in the subject activity without performing a thorough background and qualifications check;

w.  Retaining employees/agents for supervising, instructing, and assisting passengers participating in the subject activity without proper training;

x.  Retaining employees/agents knowing they did not possess the skills necessary to properly and safely instruct passengers participating in the subject activity;

y.  Retaining employees/agents when it knew, or should have known, that the employees/agents were negligent, careless, and/or reckless, incapable, incompetent, and/or posed a danger to passengers participating in the subject

surfing activity;

z.  Failing to adequately train its employees/agents whose duty it was to instruct, supervise, and assist passengers participating in the subject activity;

aa. Failing to adequately train its employees/agents whose duty it was to warn passengers participating in the subject activity of the inherent and unreasonable dangers and risks associated with the subject activity;

bb. Failing to provide adequate supervision of employees/agents who instructed, supervised, and assisted passengers participating in the subject activity when it knew, or should have known, that improper, negligent, careless, incompetent, incapable, improper, and/or reckless instruction would likely result in serious injury;

cc. Failure to adequately convey to passenger participants the risk of serious injury or death;

dd. Failure to ensure that passengers, including minor children, are physically capable of safely riding the dangerous attraction;

ee. Failure to assess a potential participant's skill, balance and experience prior to allowing the passenger to participate in the FlowRider;

ff.  Failing to adequately inspect and/or maintain the subject FlowRider, so as to ensure that the FlowRider was reasonably safe for passengers to use;

gg. Failing to warn passengers and the Plaintiff and her parents in particular of the increased water propulsion at the time of the subject incident;

hh. Failing to warn passengers and the Plaintiff in particular that the subject FlowRider was malfunctioning at the time of the subject incident;

ii. Failing to promulgate and/or enforce adequate policies and/or procedures regarding the inspection and/or maintenance of the subject FlowRider;

jj. All other acts or omissions constituting a breach of the duty to use reasonable care revealed through discovery.

51.     As a result of the negligence of Defendant RCCL, the Plaintiff was injured about her body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of his injuries, suffered permanent physical handicap, lost wage earning capacity as her working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of her vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff A.C.   demands judgment against Defendant ROYAL CARIBBEAN CRUISES LTD., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

### COUNT II –
### STRICT PRODUCTS LIABILITY FOR THE NEGLIGENT
### DESIGN, INSTALLATION, AND UTILIZATION OF THE FLOWRIDER

Plaintiff incorporates by reference and realleges as though originally alleged herein the allegations of paragraphs 1 through 43 and further alleges:

52.     At all times material hereto, Defendant RCCL owed a duty to its passengers, and

in particular to Plaintiff, to maintain and operate its vessel, *Ovation of the Seas*, in a reasonable manner under the circumstances.

53.     At all times material hereto, Defendant RCCL was a manufacturer, designer, distributor, and/or was otherwise within the chain of distribution of the FlowRider product, having put the FlowRider on which the Plaintiff was injured into the channels of trade.

54.     At all times material hereto, Defendant RCCL manufactured, designed, installed, and/or utilized the FlowRider on the *Ovation of the Seas*, and as such owed a duty to its passengers, and in particular to the plaintiff, to design and install the FlowRider without any defects.

55.     At all times material hereto, Defendant RCCL, through its agents and/or employees who were acting in the course and scope of their employment and/or agency with the Defendant, designed, installed, and utilized the FlowRider with two back steps at the top of each side of the sloped platform against which passengers would be propelled after a fall. These steps are much closer to the top of the wave than they are on a standard FlowRider, which is/was an unreasonably and inherently dangerous design and a foreseeable risk of serious injury, and thusly breached its duty of care to the Plaintiff.

56.     At all times material hereto, Defendant RCCL, knew or had reason to know that the FlowRider was unreasonably dangerous. RCCL knew or had reason to know that the FlowRider was unreasonably and inherently dangerous because prior incidents like the one described herein have occurred on their vessels.

57.     Since passengers would not be aware of the dangers involved, RCCL had a duty to warn passengers participating in the FlowRider attraction that the attraction was likely to be dangerous.

58.    The design flaw and lack of warnings which made the FlowRider onboard the *Ovation of the Seas* inherently and unreasonably dangerous was the direct and proximate cause of Plaintiff's injuries.

59.    As a result of the foregoing, the Plaintiff was injured about her body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries, suffered physical handicap, lost wage earning capacity as her working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of her vacation, cruise, and transportation costs.

**WHEREFORE,** Plaintiff A.C.   demands judgment against Defendant ROYAL CARIBBEAN CRUISES LTD., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

### COUNT III –
### VICARIOUS LIABILITY
### FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 43 as if set forth herein.

55.    The Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

56.    Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

57.    At all times material, the ship's medical staff (including its doctors and nurses), and the ship's crew, were full time employees and agents of Defendant, subject to its direction and control, who were engaged in the activity of discharging Defendant's obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

58.    Defendant directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

59.    Defendant created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

60.    Defendant pays to stock the medical center with all supplies, medical machinery, various medicines and equipment to be used therein, regularly stocking and restocking same.

61.    Defendant collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

62.    Defendant's marketing materials described the infirmary in proprietary language.

63.    The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's doctors) were members of the ship's officer's compliment, and at all times they were subject to termination or other discipline by Defendant.

64.    Defendant provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

65.     Defendant breached its duties, and was negligent by failing to adequately examine, diagnose, and/ or treat Plaintiff's injuries.

66.     Furthermore, Defendant breached its duties, and was negligent because the doctors and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the one Plaintiff suffered.

67.     Defendant also breached its duties and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

68.     Moreover, Defendant breached its duties, and was negligent by failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment she needed in a reasonable amount of time, and as a result, Plaintiff suffered additional injuries and/or Plaintiff's injuries were aggravated and made worse.

69.     Additionally, at all times material hereto, Defendant was careless, negligent, and breached its duties as follows:

a.  Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention;

b.  Failing to timely and properly diagnose Plaintiff's medical condition;

c.  Failing to attend to the Plaintiff and her injuries after her incident;

d.  Failing to escort the Plaintiff to receive reasonable medical care;

e.  Failing to provide reasonable medical care;

f.  Failing to properly treat, and care for the Plaintiff;

g.  Failing to reasonably diagnose the Plaintiff's injuries;

h.  Failing to properly examine the Plaintiff's injuries.

70.     At all times material hereto, the aforementioned acts or omissions on the part of the Defendant fell below the standard of care.

71.     Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred and/or said injuries would have been substantially lessened.

72.     Defendant, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

73.     As a direct, proximate, and foreseeable result of the Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability to earn money.

74.     The losses are either permanent or continuing in nature.

**WHEREFORE,** Plaintiff A.C. demands judgment against Defendant ROYAL CARIBBEAN CRUISES LTD., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

[SPACE LEFT INTENTIONALLY BLANK]

**COUNT IV –**
**APPARENT AGENCY AGAINST RCCL**
**FOR THE ACTS OF THE SHIP'S MEDICAL STAFF**

Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 43 as if set forth herein.

75.   At all times material hereto, the ship's medical staff were represented to the Plaintiff and the ship's passengers as an employee and/or agent and/or servant of Defendant, in that:

    a.   The medical staff wore a ship's uniform;

    b.   The medical staff ate with the ship's crew;

    c.   The medical staff was under the commands of the ship's officers;

    d.   The medical staff worked in the ship's medical department;

    e.   The medical staff was paid a salary by Defendant;

    f.   The medical staff worked aboard the vessel;

    g.   The medical staff spoke to the Plaintiff as though they had authority to do so by Defendant.

76.   At no time did Defendant represent to the Plaintiff in particular or the ship's passengers in a general and meaningful way that the Defendant was not an agent or employee of RCCL.

77.   At all material times, Plaintiff reasonably relied on the representations to her detriment that the medical staff were employees, and/or agents, and/or servants of Defendant.

78.   It was reasonable to believe that the medical staff were Defendant's agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by Defendant.

79.   This reasonable reliance was detrimental because it significantly delayed Plaintiff from receiving proper medical treatment.

80.   Defendant is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

81.   Defendant had a duty to provide the Plaintiff with reasonable care under the circumstances and through the acts of its apparent agent breached its duty to provide Plaintiff with reasonable care under the circumstances.

82.   Plaintiff injuries were accelerated due to the fault and/or negligence of Defendant through the acts of its apparent agents as follows:

     a.   Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention;

     b.   Failing to timely and properly diagnose Plaintiff's medical condition.

     c.   Failing to attend to the Plaintiff and her injuries after her incident;

     d.   Failing to escort the Plaintiff to receive reasonable medical care;

     e.   Failing to provide reasonable medical care;

     f.   Failing to properly treat, and care for the Plaintiff;

     g.   Failing to reasonably diagnose the Plaintiff's injuries; and/or

     h.   Failing to properly examine the Plaintiff's injuries.

**WHEREFORE,** Plaintiff A.C.   demands judgment against Defendant ROYAL CARIBBEAN CRUISES LTD., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of ability to earn money, loss of important bodily

functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT V—
## ASSUMPTION OF DUTY – NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 43 as if set forth herein.

83.     The Defendant owed Plaintiff the duty to exercise reasonable care under the circumstances for the safety of its passengers.

84.     Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

85.     Defendant elected to discharge this duty by having Plaintiff seen by its own ship's doctors and/or other crew members.

86.     As such, Defendant voluntarily assumed a duty for the benefit of Plaintiff to use reasonable care in the provision of medical services to the Plaintiff.

87.     Defendant breached its duties, and was negligent by failing to adequately examine, diagnose, and/ or treat Plaintiff's injuries.

88.     Furthermore, Defendant breached its duties, and was negligent because the doctors and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the one Plaintiff suffered.

89.     Defendant also breached its duties, and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

90.      Moreover, Defendant breached its duties, and was negligent by failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment she needed in a

reasonable amount of time, and as a result, Plaintiff suffered additional injuries and/or Plaintiff's injuries were aggravated and made worse.

91.     Additionally, at all times material hereto, Defendant was careless, negligent, and breached its duties as follows:

    a.  Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention;

    b.  Failing to timely and properly diagnose Plaintiff's medical condition;

    c.  Failing to attend to the Plaintiff and her injuries after her incident;

    d.  Failing to escort the Plaintiff to receive reasonable medical care;

    e.  Failing to provide reasonable medical care;

    f.  Failing to properly treat, and care for the Plaintiff;

    g.  Failing to reasonably diagnose the Plaintiff's injuries;

    h.  Failing to properly examine the Plaintiff's injuries.

92.     At all times material hereto, the aforementioned acts or omissions on the part of the Defendant fell below the standard of care.

93.     Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would have been prevented or substantially lessened.

94.     Defendant, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

95.     As a direct, proximate, and foreseeable result of the Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of

hospitalization, medical and nursing care and treatment, and loss of ability to earn money.

96.     The losses are either permanent or continuing in nature.

97.     Plaintiff has suffered these losses in the past, and will continue to suffer such loses in the future.

**WHEREFORE,** Plaintiff A.C., demands judgment against Defendant ROYAL CARIBBEAN CRUISES LTD., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT VI –
## NON-DELEGABLE DUTY TO PROVIDE REASONABLE MEDICAL CARE

Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 43 as if set forth herein.

99.     At all times material hereto, Defendant agreed and undertook, to provide a safe and secure vessel, and further provide reasonable medical care.

100.    At all times material hereto, Defendant had a duty to provide a safe and secure vessel, and further provide a reasonable degree of care and skill in attending to, examining, diagnosing, and treating the Plaintiff.

101.    Defendant breached its duties, and was negligent by failing to adequately examine, diagnose, and/ or treat Plaintiff's injuries.

102.    Furthermore, Defendant breached its duties, and was negligent because the doctors and/or other crew members that were responsible for treating Plaintiff lacked adequate

experience in treating injuries such as the one Plaintiff suffered.

103.    Defendant also breached its duties and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

104.    Moreover, Defendant breached its duties, and was negligent by failing to timely airlift, medivac, and/or disembark Plaintiff, and/or by otherwise failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment she needed in a reasonable amount of time.

105.    Additionally, at all times material hereto, Defendant was careless, negligent, and breached its duties as follows:

      a.  Failing to promptly provide Plaintiff with proper and/or adequate medical care and attention;

      b.  Failing to timely and properly diagnose Plaintiff's medical condition;

      c.  Failing to attend to the Plaintiff and her injuries after her incident;

      d.  Failing to escort the Plaintiff to receive reasonable medical care;

      e.  Failing to provide reasonable medical care;

      f.  Failing to properly treat, and care for the Plaintiff;

      g.  Failing to reasonably diagnose the Plaintiff's injuries;

      h.  Failing to properly examine the Plaintiff's injuries.

106.    At all times material hereto, the aforementioned acts or omissions on the part of the Defendant fell below the standard of care.

107.    Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred and/or said injuries

would have been substantially lessened.

108.    Defendant, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

109.    As a direct, proximate, and foreseeable result of the Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability to earn money.

110.    The losses are either permanent or continuing in nature.

111.    Plaintiff has suffered these losses in the past, and will continue to suffer such loses in the future.

**WHEREFORE,** Plaintiff A.C. demands judgment against Defendant ROYAL CARIBBEAN CRUISES LTD., for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of ability to earn money, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, A.C. (A MINOR), demands trial by jury on all issues so triable.

Dated: March 19, 2018

Respectfully submitted,

**ARONFELD TRIAL LAWYERS**
**www.Aronfeld.com**

/s/ Raul G. Delgado II
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Raul G. Delgado II, Esq.**
Florida Bar No.: 94004
rdelgado@aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No.: 115973
ahernandez@aronfeld.com
ARONFELD TRIAL LAWYERS
3132 Ponce de Leon Boulevard
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff, A.C.***